IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**RYAN ANTHONY SAVINELL # 104008**                    **PLAINTIFF**

**VERSUS**                    **CIVIL ACTION NO. 5:17-cv-104-KS-MTP**

**JODY BRADLEY, et al.**                    **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment [66] and Plaintiff's Motions for Transfer [83], [84], and [85]. After careful consideration of the law and the parties' submissions, the Court recommends that the Motion for Summary Judgment be granted, Plaintiff's Motions for Transfer be denied, and that this action be dismissed with prejudice.

## BACKGROUND

Plaintiff, a post-conviction inmate, proceeding *pro se* and *in forma pauperis* filed a complaint in this matter on August 11, 2017 relating to events that occurred at Wilkinson County Correctional Facility (WCCF). The Court held a *Spears*[1] hearing to screen and clarify Plaintiff's claims on March 23, 2018. The claims articulated at the hearing supersede the Complaint. *See* Order [51].[2]

Plaintiff claims that several correctional officers at WCCF failed to protect him. On October 26, 2016, Plaintiff was allegedly robbed of his commissary items (food and personal hygiene products) by another inmate, Marcus Sims. Plaintiff testified at the hearing that he was

---

[1] *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[2] *See Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987) (stating that allegations made at a *Spears* hearing supersede claims alleged in the complaint).

taking a shower when Sims entered the cell. Sims threatened Plaintiff and his cellmate with a knife and prevented Plaintiff from alerting the guards. Sims also stated he would stab Plaintiff if he left his cell before the guards locked the cells down.

After the alleged robbery, Plaintiff informed the guards on the next shift of the incident but none of the commissary items were recovered. Plaintiff testified that he also informed Unit Manager Diania Walker about the robbery and other altercations he had with Sims. It is Plaintiff's position that Defendant Walker ignored his concerns and instead allowed Sims to work as an orderly. This allowed Sims to work outside of his cell most of the day and forced Plaintiff to remain inside his cell to avoid Sims.

Plaintiff then testified that he was able to "red tag" Sims in December of 2016. A "red tag" request allows an inmate to be kept separate from another inmate who may pose a threat to him or her. Sims and Plaintiff are no longer housed on the same unit, but Plaintiff still allegedly fears for his life because he is presently housed with some of Sims's friends. According to Plaintiff, this fear has forced him to remain in his cell for months at a time, and he does not leave to use the shower.

Plaintiff sent grievances through the Administrative Remedy Program (ARP) to Defendants Jody Bradley and Tracey Arbuthnot requesting to be transferred to another prison. Plaintiff was not transferred to another prison.

On October 5, 2017, Plaintiff claims he was assaulted by another inmate he called "Baby-G."[3] Plaintiff alleges that Baby-G hit him on the head and cut his hand using a prison-made knife. Plaintiff believes that Baby-G is friends with Marcus Sims. After the attack, the Unit Manager, Karen Brown, allegedly prevented Plaintiff from "red-tagging" Baby-G.

---

[3] In a letter to the Court, Plaintiff said Baby-G may be Demarkevez Williams. [63] at 4.

2

Defendants filed a Motion for Summary Judgment on July 2, 2018.  Mot. [66].  Plaintiff responded on July 16, 2018.  Resp. [70].  Defendants replied on July 29, 2018.  Reply [72].

Plaintiff has also filed three Motions [83], [84], and [85] requesting a transfer to another prison.   All pending Motions are now ripe for consideration.

## ANALYSIS

*Summary Judgment Standard*

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  The Court must view the evidence in the light most favorable to the non-moving party.  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1066 (5th Cir. 1994).  In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts."  *Id.* at 1075 (emphasis omitted).  "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, … since it is the province of the jury to assess the probative value of the evidence.'"  *McDonald v. Entergy Operations, Inc.*, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

*Failure to Exhaust*

A court will not consider an action filed by a prisoner relating to civil rights violations until the prisoner has brought these claims to the proper prison administration.  The relevant

3

statute states "No action shall be brought with respect to prison conditions under section 1983 of this title or any under Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1977e(a). Exhaustion is mandatory regardless of the relief sought. *Booth v. Churner*, 532 U.S. 731, 734 (2001).

Plaintiff's claims against Defendant Brown regarding the altercation with Baby-G were not exhausted through the prison's Administrative Remedy Program and should be dismissed. Plaintiff alleges that the incident with Baby-G occurred on October 5, 2017. Amend. Compl. [16] at 1. Plaintiff filed his Amended Complaint on October 18, 2017. *Id*. Defendant Brown asserts, and the files produced by WCCF show, that Plaintiff did not file a grievance relating to the incident with Baby-G before he filed his Amended Complaint. Mot. [66-7] Exh. "G". Plaintiff appears to argue that he did exhaust his administrative remedies when he filed multiple grievances after the alleged robbery by Sims in 2016 stating that he feared for his life. Resp. [71] at 24-25.

Factually distinct incidents that occur at separate times must be individually exhausted before filing suit. *See Johnson v. Johnson*, 385 F.3d 503, 519 (5th Cir. 2004) (holding that a grievance only covered events closely related to its filing for exhaustion purposes). Plaintiff's grievances relating to Marcus Sims and other generalized fears filed before the incident with Baby-G cannot satisfy the exhaustion requirement for his claims relating to the assault by Baby-G. Therefore, Plaintiff's claims against Defendant Brown should be dismissed as Plaintiff failed to exhaust his administrative remedies before filing suit as mandated by 42 U.S.C. § 1997e(a).

*Failure to Protect Claims*

To establish a § 1983 failure to protect claim against a prison official, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his needs for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"A prison official's mere knowledge of vague threats against an inmate is not sufficient to make it clear to the official that such information presents a substantial risk of serious harm to the inmate." *Coleman v. Tanner*, 2010 WL 2009445, at *9 (E.D. La. April 27, 2010). "Plaintiff's personal fears, without more, are insufficient to demonstrate a substantial risk of serious harm." *Moorman v. Hill*, 2010 WL 1372762, at *4 (N.D. Tex. April 7, 2010).

<u>Unit Manager Walker</u>

Plaintiff sued Defendant Walker because she did not act after he informed her of the robbery perpetrated by Marcus Sims. Plaintiff does not allege that Marcus Sims physically injured him, only that Sims stole some of his personal items and verbally threatened him. Plaintiff was later allowed to "red-tag" Sims and they never had another altercation. Nothing in the record indicates that Defendant Walker was aware of a threat to Plaintiff prior to the robbery, and Plaintiff was never harmed by Sims after he reported the robbery to Defendant Walker. Inaction on the part of Defendant Walker does not create liability because Plaintiff did not suffer physical injury during or after the robbery and Defendant Walker was not aware of a substantial risk of serious harm to Plaintiff before the robbery. *Farmer*, 511 U.S. at 834 (constitutional liability is

created when a prison official acts with deliberate indifference to substantial risk of serious harm).

Negligent inaction, such as not responding promptly to an alleged theft, "does not violate the due process rights of a person lawfully held in the custody of the State." *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996). While it is unfortunate for Plaintiff that his personal items were stolen, Defendant Walker's failure to recover the commissary items does not rise to the level of a constitutional violation. *See Jones v. Hinds Cty., Miss.*, 2014 WL 1050549, at *4-5 (S.D. Miss. Mar. 14, 2014). While Plaintiff asserts that Sims remained on the same pod or housing unit for a period of time after the robbery, it is undisputed that Plaintiff "red-tagged" Sims in December of 2016 and Plaintiff never had a physical altercation with Sims after the robbery. *See Walizer v. McMullen*, 333 Fed. App'x 848, 851 (5th Cir. 2009); *Castellano v. Treon*, 79 Fed. App'x 6, 7 (5th Cir. 2003). "Absent a showing that other inmates harmed [Plaintiff], there is no factual basis for a failure to protect claim." *Walizer*, 333 Fed. App'x at 851.

Plaintiff also asserts that Defendant Walker failed to protect him from Baby-G. Resp. [71] at 29. While Plaintiff may have expressed to Defendant Walker his generalized fears regarding the housing unit at some point, Defendant Walker left her employment with WCCF in April of 2017. The altercation with Baby-G did not occur until October of 2017. *See* Reply [72] at 3. The record does not reflect that Plaintiff was injured by anyone while Defendant Walker was his unit manager.

Plaintiff does not claim a physical injury from Sims, before or after the alleged robbery. Further, Defendant was not employed at WCCF for five months prior to the altercation with Baby-G and therefore could not have been aware of any imminent threat to Plaintiff. Plaintiff

6

has not stated a cognizable § 1983 claim against Defendant Walker and summary judgment should be granted in her favor.

###### Warden Bradley and Case Manager Arbuthnot

Plaintiff sued Defendant Bradley and Defendant Arbuthnot because they did not grant his request to be moved to another facility after he was robbed and unwilling to leave his cell out of fear of other inmates. Because prisoners do not have a right to be incarcerated at a prison of their choosing, these claims asserted against Defendant Bradley and Defendant Arbuthnot do not articulate a civil rights violation. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a state." *Id*.

Here, Defendants Bradley and Arbuthnot considered Plaintiff's administrative remedy request for a transfer and informed him that the proper remedy was to "red-tag" or request to be kept separate from certain inmates. At the time of the request, Marcus Sims, the inmate Plaintiff feared, had been moved to another unit.

Defendants Bradley and Arbuthnot did not have a duty to transfer Plaintiff to another prison. As this Court has stated "it would be an unreasonable interference with prison administration to rule that prison officials have a duty to house Plaintiff at a facility of his choosing based on his generalized fears." *Williams v. Mgmt. & Training Corp.*, 2017 WL 8793429, at *3 n. 4 (S.D. Miss. Nov. 2, 2017). Even considering all the evidence in the light most favorable to Plaintiff, he has not demonstrated a failure to protect claim against Defendants Bradley and Arbuthnot.

*Plaintiff's Motions Requesting a Transfer*

Plaintiff has sent several voluminous letters which discuss an array of topics relating to his personal life. The Court liberally construes these letters as Motions to be transferred to

7

another prison. *See* Mot. [83], [84] and [85]. These letters essentially ask for the same relief that Plaintiff requested at the omnibus hearing. Order [51] at 3.

The pending Motions from Plaintiff should be denied because he does not have a constitutional right to determine the facility where he serves his sentence. *Olim*, 416 U.S. at 345. "Prison officials have broad discretion, free from judicial intervention, in classifying prisoners." *Jones v. U.S.*, 534 F.2d 53, 54 (5th Cir. 1976). Absent compelling reasons to do otherwise, this Court will defer to prison officials' administration of their own facilities. *See Kahey v. Jones*, 836 F.2d 948, 950 (5th Cir. 1988).

Moreover, these requests appear to seek mandatory injunctive relief. To obtain mandatory injunctive relief, Plaintiff must show "a clear entitlement to the relief under the facts and the law." *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 268 n. 7 (5th Cir. 1990). This type of relief is disfavored and should only be granted when the facts and the law are plainly in the moving party's favor. *Texas v. Ysleta del sur Pueblo*, 2018 WL 1566866, at *9 (W.D. Tex. Mar. 29, 2018). As noted above, Plaintiff has failed to meet this burden.

## RECOMMENDATION

The Court, therefore, recommends the following:

1. Defendants' Motion for Summary Judgment [66] be granted.

2. Plaintiff's Motions for transfer to another prison [83], [84], and [85] be denied.

3. This action be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the Magistrate Judge and the opposing

party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    THIS the 19th day of November, 2018.

                                      /s/ Michael T. Parker
                                      United States Magistrate Judge